IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED

OCT 18 2017

Clerk, U.S. District Court
District Of Montana
Missoula

TEN LAKES SNOWMOBILE CLUB;
MONTANANS FOR MULTIPLE USE,
North Lincoln County Chapter;
CITIZENS FOR BALANCED USE;
GLEN LAKE IRRIGATION DISTRICT;
BACKCOUNTRY SLED PATRIOTS;
IDAHO STATE SNOWMOBILE
ASSOCIATION; and BLUE RIBBON
COALITION,

       Plaintiffs,

   vs.

UNITED STATES FOREST SERVICE;
U.S. FOREST SERVICE, Northern
Region; KOOTENAI NATIONAL
FOREST; IDAHO PANHANDLE
NATIONAL FORESTS; LEANNE
MARTEN, Regional Forester, Northern
Region; CHRIS SAVAGE, Forest
Supervisor, Kootenai National Forest;
MARY FARNSWORTH, Forest
Supervisor, Idaho Panhandle National
Forests,

       Defendants,

   and,

THE WILDERNESS SOCIETY,
HEADWATERS MONTANA, IDAHO

CV 15–148–M–DLC

ORDER

-1-

CONSERVATION LEAGUE,
MONTANA WILDERNESS
ASSOCIATION, PANHANDLE
NORDIC SKI AND SNOWSHOE
CLUB, and WINTER WILDLANDS
ALLIANCE,

Defendant-Intervenors.

Plaintiffs move for summary judgment arguing that Federal Defendants violated the National Forest Management Act, 16 U.S.C. § 1600 et seq. ("NFMA"); the Wilderness Act, 16 U.S.C. § 1131 et seq.; the Wild and Scenic Rivers Act, 16 U.S.C. § 1271 et seq.; the National Environmental Policy Act, 42 U.S.C. § 4331, et seq. ("NEPA"); and the Administrative Procedure Act, 5 U.S.C. § 551, et seq. ("APA") when the Forest Service adopted the 2015 Revised Kootenai National Forest Land Management Plan and 2015 Revised Idaho Panhandle National Forest Revised Land Management Plan ("Kootenai Forest Plan," "Panhandle Forest Plan," and collectively referred to as the "Forest Plans"). Federal Defendants, as well as Defendant-Intervenors, oppose Plaintiffs' motion and have filed cross-motions for summary judgment. As discussed below, the Court will grant Plaintiffs' motion in part and deny the motion in part, and grant in part the cross-motions for summary judgment of Federal Defendants and Defendant-Intervenors.

# BACKGROUND[1]

This declaratory judgment action seeks injunctive relief from the Kootenai and Panhandle Forest Plans.[2] These forests lie in the Forest Service's Northern Region, or "Region 1." The Forest Plans began coordination in 2002 and were formally adopted on January 6, 2015, in the Forest Service's Final Record of Decision ("ROD"). The RODs and resulting Forest Plans were implemented 30 days after publication of the notice of the RODs in the Federal Register, and now constitute the governing land use plans for the Kootenai and Panhandle Forests.

## I. Wild and Scenic Rivers Designations

The Wild and Scenic Rivers Act ("WSRA"), was enacted in 1968 and protects "free flowing" rivers and streams possessing "outstandingly remarkable . . . values . . . for the benefit and enjoyment of present and future generations." 16 U.S.C. § 1271. As part of a forest plan revision, the Forest Service must conduct a two-step process to determine whether the project area contains potential additions to the national wild and scenic rivers system. *Id.* at § 1276(d)(1). The agency

---

[1] This background section is derived from Plaintiffs' Amended Complaint, the parties' Statements of Undisputed and Disputed Facts, and the briefs in support of their respective motions.

[2] A Forest Plan is intended to be revised "from time to time when the Secretary finds conditions in a unit have significantly changed, but at least every fifteen years . . . ." 16 U.S.C. § 1604(f)(5).

must first determine whether certain river segments are "eligible" for inclusion, and among those whether any are "suitable" for wild/scenic designation. *Id.* at §§ 1273(a), (b), 1275(a). A river is eligible for protection if it is a free-flowing stream possessing, or with adjacent land possession, "outstanding remarkable . . . values" such as "scenic, recreational, geologic, fish and wildlife, historic, cultural or other similar" characteristics. *Id.* at §§ 1271, 1273(b).

The Forest Plans included additions to the WSRA system in the Kootenai Forest. Under the existing condition and 1987 Forest Plan, the Kootenai Forest had found 112.4 miles located in the Kootenai, Yaak, Bull, and Vermillion Rivers, and Big Creek eligible for WSRA designation. The Draft Environmental Impact Statement ("DEIS") conducted by the Forest Service inventoried 752 river/stream segment candidates for WSRA eligibility. In January 2012, the DEIS reported that an additional 62.8 miles of river/stream segments qualified as eligible for additions to the WSRA. These segments were located in the Bull and West Fork Yaak Rivers, and the Grave, Quartz and Vinal Creek Systems. In August 2013, the Final Environmental Impact Statement ("FEIS") included the same 62.8 miles but also identified other specific segments that might be deemed eligible under each alternative.

During the objection period, multiple objections were made regarding the

-4-

newly eligible segments under the WSRA. This included objections made by the Plaintiffs in this case concerning the Grave and Quartz Creek systems. Other objectors contended that at least ten other segments should have been found eligible, including portions of Callahan Creek, Ross Creek, and the Wigwam River. The Forest Service responded that there was a deficiency in the record related to these specific segments.

In the 2013 FEIS, Alternative B Modified omitted the proposed additions with respect to the Grave and Quartz creek systems, so that Alternative B Modified would have added 17.3 eligible miles, while Alternatives C and D would have added 59.9 eligible miles. AR 0043410–0043411. The Proposed ROD dated August 28, 2013, recommends adopting Alternative B Modified. AR 0042875. However, while the 2015 Kootenai Final ROD made a number of changes in reaction to the Objection Responses, it did not adopt Alternative B Modified. Specifically, segments in Quartz Creek and Grave Creek were "[r]emoved from FEIS Alt. C & D as eligible river[s]" while segments in Callahan Creek and Ross Creek were "[c]hanged to be eligible river[s]." AR 0101458.

## II. New Recommended Wilderness Areas

Under the Wilderness Act, 16 U.S.C. §§ 1131–1136, Congress designates "wilderness" which represents land that is "an area where the earth and its

community of life are untrammeled by man" and that most prioritizes preservation. Absent Congressional direction in a specific bill, motorized and mechanized forms of transport in lands formally designated as wilderness are prohibited. The Forest Service evaluates "roadless" areas that may meet wilderness criteria and makes recommendations that are available to Congress. In some cases, the Forest Service determines that an area does not meet wilderness criteria. In other cases, the Forest Service may determine that an area does meet wilderness criteria, and designates and manages it as a "recommended wilderness area" ("RWA").

Here, the Draft ROD states that the 1987 Kootenai Forest Plan established a total RWA of 102,500 acres, comprised of Scotchman Peaks, Ten Lakes, and additions adjacent to the existing Cabinet Mountain Wilderness. AR 0041368. The DEIS alternatives indicate that the RWA management area allocations would be 76,500 acres under "no action" Alternative A, and 110,200 acres, 214,800 acres, and 36,100 acres under Alternatives B, C and D, respectively. AR 0039408. The Draft ROD proposes adoption of Alternative B Modified, which would designate RWAs at Scotchman Peaks (35,900 acres), Roderick (23,500 acres), Whitefish Divide (16,000 acres), and Cabinet Mountain additions (29,900) for a total RWA of 105,300 acres.

During the objection period, multiple objections were made regarding the

-6-

RWAs. The Objection Response addressed the RWA evaluation/designation

objection. The Final ROD Alternative B Modified designates 89,300 acres as

RWA, consisting of Scotchman Peaks (35,900 acres), Roderick (23,500 acres),

and Cabinet Mountain additions (29,900 acres). The Whitefish Divide (16,000

acres) was removed from RWA status due to "lack of local public support . . . in

conjunction with ongoing travel management planning in the area." The Final

ROD also modified the RWA status of the Ten Lakes Wilderness Study Area

("WSA"), designating 26,000 acres with RWA status within the 34,000 acre WSA.

AR 0102008–0102009.

## III.   Recommended Wilderness Management

Before the adoption of the Forest Plans, over-snow motorized and

mechanized use was permitted in some recommended wilderness areas in the

Kootenai and Panhandle. *See* AR 0102017, AR 0043131. Prior to adoption of the

Revised Forest Plans, the applicable legal guidance for management of RWAs was

found in the 1987 Forest Plans, which directed the RWAs to be managed to

protect wilderness character, while allowing for continuation of existing uses,

even those uses that might not be allowed in Congressionally-designated

Wilderness. Under a combination of site-specific decisions or historical practices,

certain portions or routes within RWAs have received use by motorized vehicles,

-7-

and more recently by mechanized vehicles, including mountain bikes. These uses are not allowed in formally designated Wilderness, but can and do occur in RWAs.

Further, the 2006 USFS Handbook provides that "[a]ny inventoried roadless area recommended for wilderness . . . is not available for any use that my reduce the wilderness potential of an area. Activities currently permitted may continue, pending designation, if the activities do not compromise wilderness values of the area." AR 0036960 (2006 USFS Manual § 1923.03(1)). In recent years, Region 1 began to evaluate a new policy to guide management actions involving RWA's in forests within the region. This is what the parties refer to as the "Region 1 guidance."[3] However, each forest plan and RWA is supposed to be analyzed according to its individual characteristics in order to determine the proper management of the area.

The Ten Lakes WSA is comprised of 34,000 acres, ranging from 4,000 to 8,000 feet in elevation. The terrain and configuration of the area allows for day hiking. Based on interpretation of various authorities since 1977, including the MWSA and Forest Service Manual 2329, the Kootenai has allowed oversnow

---

[3] The parties use the terms "regional guidance," "R1 consistency paper," and "guidance" throughout their briefing. These terms all refer to guidance documents issued by the Northern Region of the Forest Service. The Court will refer to these documents as the "Region 1 guidance." The regional office issued this guidance in an attempt to provide more consistent analysis and consideration of the issue of RWA management.

motorized vehicle use and mountain bike use on trails that had established

motorized bike use in 1977. As required by regulation, both of the FEISs included

a "no-action alternative" (Alternative A) that provided for continuing "current

management practices" under the 1987 Plans. AR 0042948 (Kootenai); *see also* 40

C.F.R. § 1508.25(b)(1). The FEIS notes that the no-action alternative "reflects the

1987 Forest Plan, as amended to date, and accounts for current laws and

regulations. . . . The no-action alternative retains the 1987 Forest Plan goals,

objectives, standards, and guidelines, and [management area] prescriptions, as

amended." AR 002951–002952. Consistent with the 1987 Kootenai Plan, the

no-action alternative in the final EIS provided that "[o]ver-snow vehicle use would

be allowed on 88 percent and mechanized use on 96 percent of the land base." AR

0042952; AR 0043353 (explaining that the no-action alternative contemplates

over-snow vehicle and mechanized use in RWAs on the Kootenai, and identifying

acres and percentages of forest open to such use for each alternative in Table 106).

The Final ROD designates 26,000 acres as RWA within the Ten Lakes

WSA. The Forest Service made the "site-specific decision to restrict over-snow

vehicle and mechanized use (mountain biking) within the recommended

wilderness." AR 0102019–0102020. As a result, oversnow vehicle use was

reduced from 88 percent to 86 percent, and mechanized use was reduced from 96

to 91 percent within the Kootenai Forest.

## IV.    Municipal Watersheds and Irrigation District Efforts

Glen Lake Irrigation District ("Glen Lake") is a public corporation with authority to regulate and manage irrigation as well as related land and water. Mont. Code Ann. §§ 85–7–109, 85–7–1902(4) and (5). Glen Lake is located in Lincoln County, Montana. AR 0047320–0047322. In approximately 2005, Forest Service representatives began attending bimonthly commissioner's meetings in Lincoln County to "brief[] the commissioners on the Forest Plan Revision process." AR 0030244. The 2015 Kootenai Forest Plan also included direction to protect public water source areas such as those used by the communities of Eureka, Montana and other neighboring political subdivisions. *See* AR 0101834, AR 0101835, AR 0101886, AR 0101889, AR 0101892, AR 0101899, AR 0043084—0043097, AR 0043121–0043137, AR 0043808–0043822, AR 0043965–0043967, AR 0043978, AR 0044047–0044049, AR 0044099–0044104. Glen Lake sought to participate in the planning process for the 2015 Kootenai Plan when it sent a copy of its "Natural Resource Plan" to the Forest Service in January 2009, and insisted that it has an "obligation to attain and maintain consistency" with its "Natural Resource Plan." AR 0048591–0048592.

The Forest Service responded by explaining that Glen Lake does not have

-10-

the authority under state law to regulate land use on private, state, or federal lands, and that even if state law provided such authority, federal law would preempt state law with respect to land management on the Kootenai. It then met with Glen Lake multiple times, and allowed Glen Lake to participate in the planning process. The coordination resulted in changes to the FEIS due to concerns with management needs and public water supply areas.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. "[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts as it did" based upon the "evidence in the administrative record." *City & Cnty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997) (citations omitted).

Claims brought pursuant to the NFMA, NEPA, the Wilderness Act, and the Wild and Scenic Rivers Act are reviewed under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. *See, e.g.*, *Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1013 (9th Cir. 2012), *Native Ecosystems Council v. Dombeck*, 304 F 3d 886, 891 (9th Cir. 2002). Under the APA, a "reviewing court      shall hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard is "highly deferential, presuming the agency action to be valid and [requires] affirming the agency action if a reasonable basis exists for its decision.*" Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000) (quotations and citations omitted). The Court's scope of review is narrow, and the Court should "not substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Nonetheless, an agency must still examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *MotorVehicle*, 463 U.S. at 43 (citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). In reviewing that explanation, a court must "consider whether the decision was based on a

-12-

consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (citations omitted); *see also Marsh v. Or. Nat. Resources Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). The "court may not substitute its judgment for that of the agency concerning the wisdom or prudence of the agency's action." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010).

## ANALYSIS

## I. Standing

Defendant-Intervenors contend that Plaintiffs have failed to make a basic showing of Article III standing to support their summary judgment motion. (Doc. 49 at 11.) Federal Defendants also challenge Plaintiff's standing and contend that (1) Plaintiffs fail to establish organizational standing for any Plaintiffs other than Montanans for Multiple Use because it does not establish the standing of individual members of the other organizations; and (2) Plaintiffs fail to establish standing for every claim by not alleging any injury related to the Panhandle Forest Plan. (Doc. 56 at 2, fn. 1.)

Defendant-Intervenors contend in their response to Plaintiff's motion for summary judgment that Plaintiffs failed to provide any standing declarations to support their challenges to the RWA designations or the WSRA eligibility

determinations. (Doc. 49 at 11.) In response, Plaintiffs filed a single declaration by Scott Mattheis (Doc. 54), an individual that is familiar with back country recreation in the Kootenai Forest and is a member of multiple Plaintiff organizations.

After submitting the Mattheis Declaration, Defendant-Intervenors argue that Plaintiffs still fail to establish standing. (Doc. 57 at 5–7.) They contend that the declaration does not mention the Panhandle Forest sufficient to establish standing relating to the Panhandle claims. They also assert that even though the declaration mentions the Kootenai Forest, "use" of the Ten Lakes RWA does not provide a basis for standing since the Kootenai Forest Plan made no changes to motorized and mechanized use in that area. Further, Defendant-Intervenors argue that the Mattheis Declaration's alleged harm with respect to the WSRA eligibility designations is flawed because only areas designated "wild" restrict motorized use and no areas restrict mechanized use. Consequently, Plaintiffs' injury is at most limited to those eligible rivers classified as "wild," which includes a mere 4.8 miles of Ross Creek and none of Callahan Creek. (Doc. 57 at 6–7.) Finally, Defendant-Intervenors claim that under Local Rule 1.5(c), Plaintiffs failed to properly notarize the Mattheis Declaration and it is therefore inadmissible to prove standing.

An environmental organization litigating on behalf of its members, has
Article III standing to sue if its members have suffered an injury-in-fact as a result
of the Forest Service's decisions and issuance of the Forest Plans.[4] *See Hunt v.
Washington State Apple Advertising Com'n*, 432 U.S. 333, 343 (1977). This
injury must be "(a) concrete and particularized and (b) actual or imminent, not
conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services
(TOC), Inc.*, 528 U.S. 167, 180–181 (2000) (citing *Lujan v. Defenders of Wildlife*,
504 U.S. 555, 560–561 (1992)). The injury must also be "fairly traceable to the
challenged action of the defendant," and "likely, as opposed to merely speculative,
that the injury will be redressed by a favorable decision." *Id.* In environmental
cases, the injury-in-fact prong "is satisfied if an individual adequately shows that
she has an aesthetic or recreational interest in a particular place, or animal, or plant
species and that . . . interest is impaired by a defendant's conduct. *Ecological
Rights Found. v. P. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000). Further,
once one Plaintiff organization establishes standing, all Plaintiffs have standing.
*Massachusetts v. E.P.A.*, 549 U.S. 497, 498 (2007) ("Only one petitioner needs to
have standing to authorize review.); *Horne v. Flores*, 557 U.S. 433, 446 (2009)

---

[4] Although the Plaintiff entities would probably not characterize themselves as
"environmental organizations," the law as it relates to standing applies equally to them.

(finding that once you establish standing for one petitioner, the standing of the other petitioners need not be addressed).

To satisfy 28 U.S.C. § 1746, a declaration from a petitioning organization's member must include a statement in "substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.'" The Ninth Circuit has held that a declaration need only "substantially comply with the statute's suggested language" for the Court to consider the declaration as evidence. *Commodity Futures Trading Com'n v. Topworth Intern., Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999) (internal quotation marks omitted). Substantial compliance requires the declarant to make two assertions in the declaration: (1) that the statements in the declaration were made "under penalty of perjury," and (2) "that the contents were true and correct." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995). Under this district's local rules, "[a]ffidavits must be notarized and all signatures must be hand signatures." L.R. 1.5(c).

Here, Mattheis declares under penalty of perjury that his statements made in the declaration are true and correct. (Doc. 54 at 6.) This complies with 28 U.S.C. § 1746. Although this does not comport with Local Rule 1.5(c), this rule only pertains to affidavits and not declarations. Therefore, at the outset, the Court finds

that this declaration is admissible as evidence.

The Mattheis Declaration also satisfies the standing test under *Lujan*. He identifies that he is President for the North Lincoln County chapter and a member of and/or frequently works alongside many other Plaintiff organizations, including Ten Lakes Snowmobile Club, Citizens for Balanced Use, Glen Lake Irrigation District, Backcountry Sled Patriots, and BlueRibbon Coalition. Matteheis admits that these organizations raised multiple objections during the Kootenai Forest Plan process and participated in numerous meetings with the Forest Service regarding back country recreation activities. He declares that as snowmobilers, the new Kootenai Forest Plan has adversely affected their access and activities in RWAs and designated areas under the WSRA.

Accordingly, the Court disagrees with the Defendant-Intervenors' argument and finds that the Kootenai Forest Plan has caused a concrete and particularized injury to the interests of the Plaintiff organizations and their members. Further, this injury is not speculative because a favorable outcome in this matter would result in the vacatur of the Kootenai Forest Plan and the reinstatement of the former plan. The Court thus concludes that the snowmobilers affected by the Kootenai Forest Plan have a clear recreational interest in the issue at hand and their organizations have standing in relation to their claims regarding the Kootenai

Forest.

Plaintiffs further direct attention to the submission by John Finney in relation to the remaining claims regarding the Panhandle Forest. (Doc. 63 at 9.) This document is an objection by Finney during the Panhandle Forest Plan objection period and includes the attached comments he submitted regarding the DEIS. *See* AR 0096567–00965579. Finney states that he enjoys recreating in the Panhandle Forest with his family and is a member of the Idaho State Snowmobile Association. AR 0096573. He provides specific observations about areas that have existing snowmobile use in RWAs that are proposed for closure under the new Panhandle Forest Plan, and states he believes there was inadequate review by the Forest Service of the objections made on the travel management in the area.

Therefore, due to the admission of this document in the Record, the Court disagrees with the Defendant-Intervenors' argument and finds that the Panhandle ROD has caused a concrete and particularized injury to the interests of Plaintiff organizations and its members. Further, this injury is not speculative because a favorable outcome in this matter would result in the vacatur of the Panhandle Plan and the reinstatement of the former plan. The Court thus concludes that the snowmobilers effected by the Panhandle ROD have a clear recreational interest in the issue at hand and their organizations have standing in relation to the claims

regarding the Panhandle Forest.

Consequently, Plaintiffs have standing in this case to pursue all claims against the Federal Defendants. Thus, the Court denies Defendant-Intervenors' Motion for Summary Judgment on this claim.

## II.     Wild and Scenic Rivers Act

Plaintiffs first argue that under the WSRA, Federal Defendants have not properly designated rivers in the new Kootenai Forest Plan[5] because they made "eleventh hour changes to its suitability determinations, literally adding stream segments to the Final ROD which were not previously disclosed to the public, not available for comment, and outside any of the formally presented action alternatives." (Doc. 37 at 9.) The Final ROD added new designations for segments of the Vinal Creek System, the West Fork Yaak River, Ross Creek, Callahan Creek, and two additional segments of the Bull River. In particular, two segments of the Callahan and Ross Creeks were deemed eligible in the Final ROD but were never presented to the public for comment. Plaintiffs contend that (1) this violated the NEPA requirement to open the proposal and revised proposal for further public input, and (2) the Forest Service had no basis for determining that

_____

[5] Plaintiffs only challenge WSRA designations in the Kootenai Forest Plan, not the Idaho Panhandle Forest Plan.

the Callahan and Ross Creek segments were suitable for WSRA designation.

Federal Defendants argue that Plaintiffs' WSRA claim is not ripe, and even if it were, the Forest Service properly identified eligible rivers. (Doc. 46 at 14–15.) First, Federal Defendants claim that since only Congress can "designate" a wild and scenic river under the WSRA, any "designation" challenge by Plaintiffs is not ripe because the final procedural step for the Forest Service to recommend WSRA designation to Congress has not occurred. On the merits, Federal Defendants contend that Plaintiffs have identified no specific flaws in the substance of the Forest Service's determinations of eligible rivers in the Kootenai ROD. Moreover, the Forest Service reasonably decided to not prepare a supplemental EIS because NEPA does not require a supplemental EIS to be performed if insubstantial changes were made to the Forest Plan. Defendant Intervenors concur with Federal Defendants that no supplemental EIS was required. (Doc. 49 at 32–36.)

Regarding ripeness, the Court finds that while Plaintiffs may have confused their terms referring to "suitability determinations" and "designations," Plaintiffs here are specifically challenging the Kootenai Forest Plan's identification of certain rivers as eligible under the WSRA. There is no dispute that only Congress can designate rivers under the WSRA. *See* 16 U.S.C. § 1275.

The Court will not engage in a semantics exercise. The Court concludes that the Plaintiffs' claims are directed to the Callahan and Ross Creek suitability determinations, which are ripe for review.

The Court also finds that the identification of the Callahan and Ross Creek segments as eligible under the WSRA does not require a supplemental NEPA analysis. NEPA requires that an agency supplement a draft EIS if the agency makes "substantial changes in the proposed action that are relevant to environmental concerns[.]" 40 C.F.R. 1502.9(c)(1)(i). If the final agency action "departs substantially from the alternatives described in the draft EIS," a supplemental EIS is required. *Russell Country Sportsmen v. U.S. Forest Serv.*, 668 F.3d 1037, 1045 (9th Cir. 2011) (quoting 40 C.F.R. § 1502.9(c)). However, while Section 1502.9 does not define the terms "substantial changes" and "relevant to environmental concerns," the Council for Environmental Quality (CEQ) published guidance on when changes to a proposed action will require preparation of a supplemental EIS. *Id.* "The CEQ guidance provides that supplementation is not required when two requirements are satisfied: (1) the new alternative is a "minor variation of one of the alternatives discussed in the draft EIS," and (2) the new alternative is "qualitatively within the spectrum of alternatives that were discussed in the draft [EIS]." *Id.* (quoting and adopting

Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations, 46 Fed. Reg. 18,026, 18,035 (Mar. 23, 1981)).

Plaintiffs have failed to explain why the modification and inclusion of the Callahan and Ross Creek segments as eligible under the WSRA constitute "substantial changes . . . relevant to environmental concerns." Plaintiffs only argument is that the "'insubstantial variations' theme applies to numeric deviations within the outer bounds of the alternatives, not the identification of entirely new decision components never presented for public input." (Doc. 52 at 4.) However, Federal Defendants respond that the identification of the Callahan and Ross Creek segments as eligible apply to only 0.1 percent of the lands managed on the Kootenai National Forest. (Doc. 63 at 51.) In the FEIS, the Forest Service compares alternatives for management areas. AR 0042970. Management Area 2 includes the area where the Callahan and Ross Creek segments are located, and Alternative B Modified was the altenative that was ultimately adopted. Thus, the FEIS states that 38,300 acres or 1.7% of the Kootenai Forest would be managed in accordance with the WSRA to preserve the outstandingly remarkable values. *Id.* The *errata* to the FEIS includes the eligibility of the Callahan and Ross Creek segments in Management Area 2 and updates the value to 41,000 acres or 1.8% of the total forest. Thus, the difference of adding the additional WSRA eligible

segments increased total management by only 0.1%. The Court finds this amount to be a minor variation that was qualitatively within the spectrum of alternatives that were discussed in the FEIS.[6] Accordingly, no supplemental EIS was required.

With respect to the basis for the analysis of WSRA eligibility, the Court finds that the Forest Service did properly designate the Callahan and Ross Creek segments as suitable. Callahan Creek is free-flowing and possesses outstandingly remarkable values. The creek has historical values tied to unique logging practices performed in the 1920s that make it eligible for the National Register of Historic Places.[7] AR 0101459. This is an outstandingly remarkable value. There is also no dispute that Callahan Creek is free-flowing.[8] Ross Creek also possesses

[6] For example, Table 5 in the FEIS contemplates Alternative A, Alternative B Modified, Alternative C, and Alternative D. AR 0042970. Under Management Area 2, Alternative B Modified managed 38,300 acres, Alternative C managed 45,100 acres, and Alternative D managed 50,200 acres. The Forest Service could have adopted Alternative C or D with an upwards of 10,000 more acres managed, but chose to adopt Alternative B Modified with minor variations. Thus, the inclusion of an additional 2,700 acres in the *errata* to the FEIS under Management Area 2 and Alternative B Modified was certainly within the spectrum of available alternatives and is a minor variation. AR 101432.

[7] "Callahan Creek has an ORV for history, as it lies within a special area (MA#) and has been determined eligible for National Register listing (Callahan Creek Historic Mining and Logging District 24LN544). This includes the unique aspect of the 1920 timber sale in which logs were transported over a narrow gauge (36") railroad system. The Snow Storm Silver-Lead Mining Company rail was extended specifically to haul timber. The portion of Callahan and South Fork Callahan Creek within the special area (13 miles) is eligible." AR 0101459.

[8] "Free-flowing" is defined as not having artificial impoundments (e.g. dams). Wild & Scenic Rivers, *About the WSR Act*, https://www.rivers.gov/wsr-act.php (last visited Oct. 11, 2017).

-23-

outstandingly remarkable values for its scenic, recreation, and botany. While there is some dispute as to whether Ross Creek is "free-flowing" because it is dry in the summertime, there are no artificial impoundments and it is correctly deemed as free-flowing. Therefore, there is sufficient evidence to find the Callahan and Ross Creek segments eligible for inclusion under the WSRA and the Court concludes that the Forest Service did not abuse its discretion in doing so.

The issue here lies with the issuance of the Final Kootenai ROD without an objection response period in regards to inclusion of the Callahan and Ross Creek segments as WSRA eligible. The table that included the WSRA eligible segments in the August 2013 FEIS did not make any reference to either Callahan or Ross Creek. *See* AR 0043410–0043411, Table 123. Further, the DEIS did not mention these two creeks. AR 0040038. The public was only allowed comment after the issuance of the August 2013 FEIS during the objection response period. Notably, Ten Lakes Snowmobile Club objected to the inclusion of segments in the Grave and Quartz Creek systems as eligible, which was the very reason the Forest Service re-evaluated the eligibility of these two creeks and took them off the list in the Final ROD. However, upon issuance of the Final ROD in January 2015, the Forest Service did not provide any objection response period in regards to the Callahan and Ross Creek segments. This was error. Consequently, the Court

-24-

finds that the Forest Service abused its discretion by including the Callahan and Ross Creek segments as eligible under the WSRA without providing public comment. The Court remands this specific portion of the Final ROD to the Forest Service, and grants Plaintiffs motion for summary judgment on this claim.

## III. Recommended Wilderness Area Designations

Next, Plaintiffs argue that the Forest Service violated the APA and NEPA by improperly designated RWAs in the Ten Lakes, Roderick, and Scotchman Peaks areas. (Doc. 63 at 21.) Defendants maintain that the Forest Service properly designated the RWAs, conducted the appropriate studies in making its decision, and that the technical expertise employed by the Forest Service is entitled to deference. (Doc. 46 at 19.) Defendant-Intervenors agree with the Federal Defendants. (Doc. 49 at 12.)

The Forest Service process for evaluating and designating potential additions to the National Wilderness Preservation System is prescribed by the Forest Service Handbook. AR 0088930–0088954. The process starts with identification and inventory of relevant areas, resulting in "potential wilderness" that the Forest Service then assesses for (1) its capability to be designated as wilderness by Congress (i.e., "the degree to which the area contains the basic characteristics that make it suitable for wilderness recommendation without regard

to its availability for or need as wilderness"), (2) its availability for designation as a wilderness area (i.e., "the value of and need for the wilderness resource compared to the value and need for other resources") , and (3) the need for such a designation (i.e., "the degree to which the potential wilderness area would contribute to the overall national Wilderness Preservation System."). AR 0043691. The second step involves using these assessments to determine overall suitability for potential RWA designation. Then, once the initial evaluation rating is completed, public comment is considered before issuing the FEIS.

Plaintiffs first argument on the identification of RWAs is more "form over substance," as Federal Defendants describe it.[9] Plaintiffs contend that the Forest Service violated NFMA because it considered "[e]ight resource categories" rather than the nine enumerated "elements" in its availability assessment. (Doc. 37 at 11–16.) However, the nine elements regarding "Availability for Wilderness" highlighted by Plaintiffs were not enumerated in the USFS Handbook until 2007. AR 0088953–0088954 (2007 Handbook), compare to AR 00214847–00217862 (earlier Handbook). Consistent with the earlier Handbook, the Kootenai

---

[9] Federal Defendants also argue that Plaintiffs' argument relating to the eight resource categories has been waived because Plaintiffs did not raise it through the administrative process. (Doc. 46 at 20.) However, Federal Defendants gloss over this waiver argument. Consequently, the Court will address the merits of the claim.

wilderness program manager identified eight resource categories for assessment. Federal Defendants claim that because the majority of the Forest Service's evaluation for potential wilderness areas in the Kootenai occurred before the 2007 Handbook was released, and because the eight elements almost entirely overlap with the updated nine elements, the Forest Service determined that it would not redo its extensive evaluations and would instead rely on the eight resource categories it had on record.

On this issue, the Court defers to the methodology used by the Forest Service. NEPA's "required 'hard look' at environmental consequences . . . does not require adherence to a particular analytic protocol." *Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158, 1188 (9th Cir. 1997). "The specific methodology appropriate in a given circumstance will depend on the variable factors peculiar to that case, and we must judge it under a rule of reason." *Id.* Here, the Court finds that even though the Forest Service used only eight of the nine elements required for availability assessment under the 2007 Handbook, given that the original assessment was conducted prior to the issuance of the new Handbook, the Forest Service effectively analyzed the elements it had before it at the time of evaluation. *Compared to Oregon Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1121 (9th Cir. 2010) (finding that the Bureau of Land

Management used "no method to analyze or plan for the management of such values"). After reviewing the differences in the earlier Handbook and the 2007 Handbook, the Court agrees with Federal Defendants that the eight elements used by the Forest Service were sufficient for assessing RWAs.[10] *See* AR 0043719–0043736. Thus, the Court concludes that the methodology employed by the Forest Service in assessing the RWAs constitutes a reasonably "hard look" at long-term environmental harm.

Next, Plaintiffs argue that the designation of RWAs is substantially flawed because the record fails to establish a rational connection between any facts found and the ultimate choices made. (Doc. 37 at 12.) Federal Defendants and Defendant-Intervenors contend that the RWA designations were rationally explained and supported in the record. Further, Federal Defendants assert that the Plaintiffs "fly speck" the record by focusing on inconsequential, minor deficiencies. (Doc. 46 at 22–23.)

NEPA requires the Forest Service to "identify any methodologies used and shall make explicit reference by footnote to the scientific and other sources relied

---

[10] For example, the 2007 Handbook refers to "Minerals," "Water availability and use" and "Timber," whereas the FEIS considered "Areas of high value mineral deposits of economic or strategic importance," "Areas that are of high value for water yield . . . ," and "Lands committed through contracts, permits or agreements what would be in conflict with wilderness management." AR 0088953–0088954 compared to AR 0043719.

upon for conclusions in the statement." 40 C.F.R. § 1502.24; *see also Idaho Sporting Cong. v. Thomas*, 137 F.3d 1146, 1150 (9th Cir. 1998), *overruled on other grounds by Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) (en banc) ("NEPA requires that the public receive the underlying environmental data from which a [reviewing agency] expert derived her opinion.").

Here, the Court finds that the Forest Service properly analyzed the suitability for potential wilderness and employed tests for capability, availability, and need. While Plaintiffs claim that the analysis of the Forest Service does not allow a reviewer to determine what data the agency used and that there is essentially no perspective into the process used by the Forest Service, that argument is belied by the record. With respect to capability, the record indicates that the Forest Service examined five issues: whether the potential wilderness is natural, undeveloped, has outstanding opportunities for solitude or primitive and confined recreation, has special features and values, and has overall suitability for management. AR 0043691–0043691. The Forest Service then broke down these five characteristics into 19 elements, activities, or features, and then identified 47 criteria to consider existing as well as future conditions both inside and adjacent to specific areas. *Id.*; Doc. 63 at 38–39. They rated these criteria low, medium, and high. The capability results for each area within the Kootenia Forest are detailed

in the record. *See* "Capability Results" AR 0043698–0043718. The capability

assessment took nearly four years, from September 2002 until early 2006. (Doc.

63 at 39.)

The Forest Service also looked at eight categories to weigh the availability

of an area for wilderness management against other resource needs, demands, and

uses of the area. AR 0043718–0043719. The availability results for the Kootenai

Forest are found at AR 0043720 to AR 0043728. Finally, the Forest Service

engaged in a thorough evaluation to determine need as part of the overall National

Wilderness Preservation System. 0043728. This is summarized at AR 0043728 to

AR 0043736.

Forest land managers then reviewed the evaluations and determined which

areas would be suitable for wilderness designation. AR 0043737–000043740.

The summaries of all of these inventoried roadless areas are found in the record at

AR 0043746 to AR 0043806, and include descriptions of each area. With regard

to Cabinet Mountain East and West, Roderick, Scotchman Peaks, and Ten Lakes

areas, all rated high in capability, availability and need, and were suitable for

recommend wilderness. See AR 0043755–0043758, 000043788–0043790,

0043791–0043796. After reviewing the FEIS, in respect to these four areas that

Plaintiffs take issue with, the Court concludes the Forest Service made rational

connections between the assessments and the suitability for RWA designation.[11]

In light of the foregoing, this Court concludes that the Forest Service reasonably designated RWAs for the Kootenai Forest Plan. The Court grants Federal Defendants' and Defendant-Intervenors' motions for summary judgment and denies Plaintiffs' motion for summary judgment on this claim.

## IV.    Illegally Managed RWAs

### A.    Site-Specific Analysis

Plaintiffs also claim that with regard to management of RWAs there was a concomitant site-specific restriction to prohibit all motorized and mechanized transport that required site-specific analysis, which the Forest Service did not do. (Doc. 63 at 21.) Federal Defendants maintain the Forest Service properly manages the RWAs in the Kootenai and Panhandle Forests and it conducted the appropriate studies in making its decision to restrict motorized access in the RWAs. (Doc. 46 at 24.) Defendant-Intervenors also argue that the Forest Service's decision to maintain the wilderness character of the RWAs is not arbitrary or capricious, is consistent with the Forest Plan, is supported by sound scientific evidence, and is based on the agency's expertise. (Doc. 49 at 18–29.)

---

[11] The Court also recognizes that the only new RWA in the Kootenai Forest Plan was the Roderick. Doc. 46 at 19; AR 0102008. Scotchman Peaks, the Cabinets, and Ten Lakes were recommended as wilderness areas under the 1987 Plan. *Id.*

The 2006 USFS Handbook provides that "[a]ny inventoried roadless area recommended for wilderness . . . is not available for any use that may reduce the wilderness potential of an area. Activities currently permitted *may* continue, pending designation, if the activities do not compromise wilderness values of the area." AR 0036960 (2006 USFS Manual § 1923.03(1) (emphasis added)). The Kootenai Forest Plan requires that RWAs should "provide opportunities and experiences one would expect to find in a wilderness environment," and "is managed to maintain wilderness characteristics." AR 0043693, 0044003.

Having reviewed the record in this case, the Court finds that the Forest Service's decision to restrict over-snow vehicle and mechanized use in the RWAs in order to avoid degradation of wilderness characteristics is adequately explained in the ROD and is not arbitrary or capricious. The Forest Service provided a reasoned analysis of this issue in the ROD and FEIS for both forests, and considered the environmental impacts of its decision after weighing the relevant data and materials. *See, e.g.*, AR 0102019–0102020 (Kootenai), AR 0101763 (Panhandle). For example, in the Kootenai, the Forest Service considered the effect of over-snow motorized use on grizzly bears (AR 0043184-86), and discussed the impacts of recreation activities on big game (AR 0043296-99). In the Panhandle, the Forest Service analyzed the effects of motorized over-snow

access on lynx (AR 0041664-65) and wolverines (AR 0041720-21). Thus, the record supports the decision of the Forest Service to manage these areas as protected wilderness.

### B. Illegally Managed as Formally Designated Wilderness

Plaintiffs further claim that the Wilderness Act limits the discretion of the Forest Service to consider wilderness values in managing lands outside of the designated wilderness area. (Doc. 37 at 16.) Federal Defendants and Defendant-Intervenors disagree and claim that even if it did, the management of RWAs is different than designated wilderness areas. (Docs. 46 at 28-29; 49 at 23.)

The Wilderness Act was enacted "to assure that an increasing population, accompanied by expanding settlement and growing mechanization, does not occupy and modify all areas within the United States and its possessions, leaving no lands designated for preservation and protection in their natural condition." 16 U.S.C. § 1131(a). The Act requires that agencies managing "any area designated as wilderness shall be responsible for preserving the wilderness character of the area" and limits those areas to "the public purposes of recreational, scenic, scientific, educational, conservation, and historical use." § 1133(b). The Act also prohibits any motorized equipment in wilderness areas. § 1133(c). The Forest Service has authority to manage National Forest lands,

including recommended wilderness areas, to protect them from development. *See* 1897 Organic Act, 16 U.S.C. §§ 472–482, 551; Multiple-Use Sustained-Yield Act, 16 U.S.C. §§ 528–531. The Ninth Circuit has also recognized that the Forest Service has discretion to restrict motorized use on National Forest lands to preserve primitive, wilderness, and wild areas. *McMichael v. United States*, 355 F.2d 283, 284-86 (9th Cir. 1965) (rejecting challenge to Service regulations prohibiting motorized vehicles in primitive areas); *Oregon Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1115 (9th Cir. 2010) ("[V]arious options for the management of lands with wilderness characteristics remain even if permanent congressional preservation of non-WSA land is no longer an option.")

Thus, the Court finds that according to statute and Ninth Circuit law, the Forest Service has broad authority to manage and protect RWAs that fall outside designated wilderness areas.

## C.    Region 1 Guidance

Finally, Plaintiffs assert that the RWA management decisions were improperly influenced by Region 1 guidance as opposed to the site-specific analysis of impacts to wilderness character in the Kootenai and Idaho Panhandle National Forests. (Doc. 37 at 22–24.) Plaintiffs believe these guidance documents created an inflexible prohibition of all motorized and mechanized travel in the

RWAs.  Federal Defendants and Defendant-Intervenors reject this argument.
(Docs. 46 at 28; 49 at 29.)

The Court finds that the Plaintiffs' focus on Region 1 guidance is
unfounded and purely speculative.  The record demonstrates that the FEIS in the
Kootenai and Panhandle Forests considered site-specific impacts of motorized and
mechanized vehicles.  AR 0101417 (explaining the whitepaper "was considered
during the analysis but does not represent binding policy."); *see also* AR 0089345;
AR 0099865– 0099866; AR 0099944–0099945; AR 0101512.  Moreover, the
revised Forest Plans omitted some areas that had previously been recommended as
wilderness in the 1987 Plan, which provides further support that the Forest Service
did not follow the Region 1 guidance as a whole.

Consequently, in regards to the overall management of the RWAs in the
Kootenai and Panhandle Forests, the Court grants Federal Defendants' and
Defendant-Intervenors' motions for summary judgment and denies Plaintiffs'
motion for summary judgment on this claim.

## V.    No Action Alternative

Plaintiffs also raise with respect to the RWAs a NEPA argument that there
was an insufficient range of alternatives for the Forest Plans, and the Forest
Service had a mandatory duty to consider something other than the alternatives

that the agency looked at, such as the continuation of historical uses in the Kootenai and Panhandle Forests. (Doc. 37 at 24.) Thus, Plaintiffs claim that the Forest Service should have examined a true "no action" alternative involving no update, in any respect, to the existing 1987 Forest Plans.

The EIS for both forests examined the "no action" alternative Plaintiffs specify. The record identifies this as "Alternative A" which provides for continuing "current management practices" under the 1987 Plans. AR 0042948 (Kootenai); AR 0041443 (Panhandle). The final EISs note that the no-action alternative "reflects the 1987 Forest Plan, as amended to date, and accounts for current laws and regulations. . . . The no-action alternative retains the 1987 Forest Plan goals, objectives, standards, and guidelines, and [management area] prescriptions, as amended." AR 0042951–0042952 (Kootenai); AR 0041447 (Panhandle). Therefore, this argument fails, and the Court grants Federal Defendants' and Defendant-Intervenors' motions for summary judgment and denies Plaintiffs' motion for summary judgment on this claim.

## VI.  Glen Lake

Finally, Plaintiffs contend that the Glen Lake Irrigation District ("Glen Lake") was not afforded proper coordination from the Forest Service regarding the updated Kootenai Forest Plan. In particular, Plaintiffs rely on a letter sent by the

Forest Service to Glen Lake regarding mutual coordination. *See* AR 0048591–0048598. Federal Defendants argue that Glen Lake delayed its efforts to participate in the planning process until it sent a copy of its "Natural Resource Plan" to the Forest Service in January 2009. (Doc. 46 at 33.) They also claim that Glen Lake does not have the authority under state law or federal law to regulate land use on federal lands. Further, Federal Defendants argue that the Forest Service met with Glen Lake, provided information when requested, solicited, and responded to comments throughout the planning process, and incorporated their objections regarding the Whitefish Divide area into the FEIS.

NFMA requires the Forest Service to coordinate forest planning "with the land and resource planning processes of State and local governments and other Federal agencies." 16 U.S.C. § 1604(a). NFMA's implementing regulations also require the Forest Service to "coordinate regional and forest planning with the equivalent and related planning efforts of . . . local governments." 36 C.F.R. § 219.7(a) (1982).

First, the Court finds that Glen Lake has no regulatory authority on federal lands. This was appropriately addressed by the Forest Service in its response letter to Glen Lake's "Natural Resource Plan." AR 0048591–0048598. The Forest Service also did not violate its obligations under NFMA. Federal Defendants

maintain they have adequately coordinated with Glen Lake in developing the

Kootenai Forest Plan by contacting it throughout the planning process, meeting

numerous times with Glen Lake officials, and taking Glen Lake's input into

consideration. Glen Lake's concerns regarding forest fires and fuels management

in the municipal watershed for Glen Lake and the town of Eureka were taken into

consideration by the Forest Service, as evidenced by the fact that it made changes

to the FEIS by removing surrounding areas from RWA eligibility. AR 0089428,

0043378. Thus, the level of engagement from the Forest Service more than

satisfies NFMA's coordination requirement. For these reasons, the Court grants

Defendants' and Defendant-Intervenors' Motion for Summary Judgment and

denies Plaintiffs' Motion for Summary Judgment on this final claim.

## CONCLUSION

When an agency action is not promulgated in compliance with the APA, the

action is deemed to be invalid. *Organized Village of Kake*, 795 F.3d at 970; *see*

*also Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of

invalidating an agency rule is to reinstate the rule previously in force."). Further,

upon remand, a court should provide the agency with specific instructions to

address its errors. *Friends of Wild Swan v. U.S. Envtl. Protec. Agency*, 74 Fed.

Appx. 718, 722 (9th Cir. 2003) (unpublished) ("We have previously found remand

with specific instructions to be an appropriate remedy for APA violations.").

Here, because the Court concludes that the Forest Service's decision finding the Callahan and Ross Creek segments as eligible under the WSRA without public comment was arbitrary and capricious, the Court remands the Kootenai Forest Plan with instructions to: (1) conduct an objection response period with respect to these two creeks; (2) take the objections into consideration; and (3) either modify the FEIS and Final ROD accordingly, or if included under the WSRA, show that the eligibility of the Callahan and Ross Creek segments is permissible under the APA. In all other respects, the Court finds that the Kootenai and Panhandle Forest Plans do not violate the National Environmental Policy Act, the National Forest Management Act, or the Wild and Scenic Rivers Act. With the exception of the narrow remand ordered above, the Court finds that the Plaintiffs have failed to establish that the challenged actions of the Forest Service were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

Accordingly, IT IS ORDERED that:

(1) Plaintiff's Motion for Summary Judgment (Doc. 36) is GRANTED IN PART AND DENIED IN PART;

(2) Federal Defendant's Cross-Motion for Summary Judgment (Doc. 45) is GRANTED IN PART AND DENIED IN PART;

(3) Defendant-Intervenors' Cross-Motion for Summary Judgment (Doc. 48) is GRANTED IN PART AND DENIED IN PART;

(4) This matter is REMANDED to the United States Forest Service for further consideration consistent with this order.

DATED this 18th day of October, 2017.

Dana L. Christensen, Chief Judge
United States District Court